IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL T. PAULY
and DANIEL B. PAULY,

      Plaintiffs,

  vs.                                                        Civ. No. 15-783 JCH/KBM

MARIO VASQUEZ, individually,
former NEW MEXICO STATE POLICE
CHIEF ROBERT SHILLING, individually,
and NEW MEXICO STATE POLICE CHIEF
PETE KASSETAS, individually,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendants' First Motion To Dismiss Plaintiffs' Complaint and Memorandum in Support Thereof* [Doc. 12], and *Defendant Mario Vasquez's Motion To Dismiss First Amended Complaint for Damages for Deprivation of Civil Rights* [Doc. 18].

Having reviewed the motions, briefs, and relevant law, the Court concludes that the motions should be granted, to the extent they are not moot.[1]

## PROCEDURAL BACKGROUND

The Complaint was filed on September 3, 2015, against Defendants Mario Vasquez and the State of New Mexico Department of Public Safety ("DPS"). [Doc. 1]  Defendants filed a

---

[1] Parts of the motions to dismiss have been rendered moot by filing of the First Amended Complaint and the dismissal of Defendants Shilling and Kassetas.  [Doc. 27]

motion to dismiss on October 29, 2015, for failure to state a claim, Eleventh Amendment immunity, and qualified immunity.  [Doc. 12]

Plaintiffs then filed the First Amended Complaint for Damages for Deprivation of Civil Rights ("FAC") on November 16, 2015.  [Doc. 13]  The FAC names as Defendants:  Mario Vasquez, former New Mexico State Police Chief Robert Shilling, and New Mexico State Police Chief Pete Kassetas.  Count 1 of the FAC asserts a § 1983 claim for a Fourteenth Amendment violation of the right to privacy; Count 2 asserts a *Monell* claim against Shilling and Kassetas.  Defendant Vasquez then filed a second motion to dismiss under Rule 12(b)(6), based on qualified immunity and incorporating his arguments from the first motion to dismiss.  [Doc. 18]

On March 2, 2016, Plaintiffs filed a notice voluntarily dismissing Defendants Shilling and Kassetas.  [Doc. 26]  The Court then filed an Order of Dismissal of those Defendants, stating that the case shall proceed only against Defendant Vasquez.  [Doc. 27]

The FAC removed DPS as a Defendant; therefore rendering moot (as Plaintiffs recognize in their response to the first motion to dismiss) the parts of Defendants' first motion arguing for dismissal of the claim against DPS under Rule 12(b)(6) and the Eleventh Amendment.  [Doc. 15, pp. 5-6]  Count 2 of the FAC is asserted only against Defendants Shilling and Kassetas; since those Defendants have been dismissed pursuant to Plaintiffs' notice of voluntary dismissal, Count 2 has been effectively dismissed and arguments regarding Shilling and Kassetas are moot.

The only claim remaining in the case is Count 1, asserted against Defendant Vasquez. The only non-moot issue in Defendants' two motions to dismiss is whether Vasquez is entitled to qualified immunity on Count 1.

## FACTUAL BACKGROUND

The following is a statement of relevant facts, viewed in the light most favorable to Plaintiffs.[2]

On October 4, 2011, New Mexico State Police officers went to the Pauly residence to follow up on a call.  The officers sneaked up to the residence, although there was no active threat and no reasonable suspicion of criminal activity.  Samuel Pauly and his brother Daniel B. Pauly were inside the residence and were afraid that the people outside were intruders.  Because of that fear, Daniel went to the back of the house and informed the intruders that they had guns; Daniel fired warning shots into the air.

An officer who was sixty feet away from the house, protected behind a rock wall, shot and killed Samuel;[3] the officer had not announced that he was a state police officer or warned that he would use deadly force.  State Police Officer Mario Vasquez was called to the scene to act as manager of the crime scene log.  Vasquez took photographs of Samuel's dead body on his personal cell phone, and texted those photographs to friends.

On September 3, 2012, Plaintiff Daniel T. Pauly (Samuel's father) was notified by local news media that they had obtained the photographs taken by Vasquez.  This was the first time any member of the Pauly family found out that Vasquez had taken photographs and texted them to his friends.

First Judicial District Attorney Angela Pacheco commented that Vasquez's actions were "'totally inappropriate and lacking in judgment and taste.'"  [Doc. 13, p. 4, ¶ 20]  News media, including KOAT-TV Albuquerque televised the photographs of Samuel's body.

---

[2] For purposes of resolving the motions to dismiss, the Court accepts as true the facts alleged in the FAC.  *See Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

[3] The shooting death of Samuel Pauly is the subject of a separate lawsuit, *Pauly v. White*, 814 F.3d 1060 (10th Cir.) (affirming denial of summary judgment in favor of officers), *pet. for reh'g & reh'g en banc denied*, 817 F.3d 715 (10th Cir. 2016), *pet. for cert. filed* (July 11, 2016).

## LEGAL STANDARDS

"Qualified immunity is designed to shield public officials from liability and ensure 'that erroneous suits do not even go to trial.'" *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)). In addition, qualified immunity is designed to prevent government officials from facing the other burdens of litigation. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed] . . . in performing their official duties.'" *Wilson v. City of Lafayette*, 510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished)[4] (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)). The qualified immunity standard allows "'ample room for mistaken judgments,'" allowing accommodation for reasonable error. *Applewhite v. U.S. Air Force*, 995 F.2d 997, 1000 (10th Cir. 1993) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To survive a motion to dismiss based on a claim of qualified immunity, the plaintiff bears a "heavy two-part burden." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008); *see A.M. v. Holmes*, ___ F.3d ___, ___, 2016 WL 3999756, *6 (10th Cir. 2016). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Archuleta*, 523 F.3d at 1283. § 1983 creates no substantive rights, but "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The validity of a claimed constitutional violation is judged "by reference to the specific constitutional standard

---

[4] The Court cites this and other unpublished opinions for their persuasive value. *See* 10th Cir. R. 32.1(A).

which governs that right." *Id.* at 394.  The second part of the plaintiff's burden is to "show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Archuleta*, 523 F.3d at 1283.

A right is clearly established if the "'contours of the right'" are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Albright*, 51 F.3d at 1535 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A plaintiff can carry his burden of showing that a right is clearly established by citing Supreme Court or Tenth Circuit caselaw on point, or by demonstrating that the weight of authority from other courts shows the right to be clearly established.  *Archuleta*, 523 F.3d at 1283; *Albright*, 51 F.3d at 1535.  If the plaintiff fails to carry either part of this two-part burden, the defendant is entitled to qualified immunity.  *Archuleta*, 523 F.3d at 1283.  If the complaint fails to properly allege a violation, the court need not reach the question of whether the law was "clearly established."  *Butler v. Rio Rancho Pub. Sch. Bd.*, 341 F.3d 1197, 1200 (10th Cir. 2003).  The court has discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first, under the particular circumstances of each case.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The plaintiff need not identify "a *perfectly* on-point case" or caselaw with "precise factual correspondence," but does not carry his burden by pointing only to "'clearly established law at a high level of generality.'"  *Quinn v. Young,* 780 F.3d 998, 1005, 1013 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, (2011)).  "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."  *City of San Francisco v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1776, 191 L. Ed. 2d 856 (2015).  The clearly established right at issue should be defined "'on the basis of the specific context of the case.'"  *Quinn*, 780 F.3d at 1005 (quoting *Tolan v. Cotton*, ___ U.S. ___,

5

134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)). "[A] plaintiff may not simply allege—and the district court likewise may not accept as sufficient—the defendant's violation of an amorphously-defined Fourth Amendment right"; instead, the plaintiff must show "'a *substantial correspondence* between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" *Id*. at 1009 (quoting *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

## DISCUSSION

Count 1 asserts a § 1983 claim of a constitutional violation of a privacy right under the Fourteenth Amendment,[5] based on Officer Mario Vasquez's conduct in taking photographs of Samuel Pauly's dead body and texting those photographs to Vasquez's friends. The photographs were later obtained and disseminated by news media.

Defendant Vasquez argues that Plaintiffs failed to identify case law showing that the constitutional privacy right asserted under Count 1 was "clearly established." Vasquez argues that he is entitled to qualified immunity because the "purported right at issue—plaintiffs' asserted Fourteenth Amendment right to control images of decedent Samuel Pauly—was *far* from 'clearly established'" at the time of Vasquez's conduct. [Doc. 12, p. 8]

Plaintiffs are required to identify specific actions taken by the defendant in order to make out a viable § 1983 claim. *A.M. v. Holmes*, ___ F.3d ___, 2016 WL 3999756, *30 (10th Cir. 2016); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The only specific actions by Vasquez identified in the FAC are Vasquez's taking and texting photographs on October 4-5, 2011; therefore, the "relevant time" is October 4-5, 2011.[6]

---

[5] The FAC does not attempt to assert violation of a statutory right.
[6] The FAC also alleges that it was on September 3, 2012, that Plaintiffs discovered that local news media had obtained the photographs, and the photographs were then publicized. Plaintiffs make no allegation or argument,

Plaintiffs bear the burden of citing what they think constitutes clearly established law. *Quinn*, 780 F.3d at 1013; *see Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

"Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as [she] maintains." *A.M. v. Holmes*, ___ F.3d ___, 2016 WL 3999756, *6 (10th Cir. 2016) (internal quotation marks omitted). It is not always required that the plaintiff identify "'case law on point.'" *Id.* (quoting *Morris v. Noe*, 672 F.3d 1185, 1196-97 (10th Cir. 2012)). Officials may be on notice that their conduct violates established law even in novel factual circumstances; a plaintiff "need not show that the very action in question [has] … previously been held unlawful," but the unlawfulness must be apparent "in the light of pre-existing law." *Id.* (internal quotation marks omitted); *see Albright*, 51 F.3d at 1535.

The Supreme Court's opinion in *Reichle* includes extensive discussion of when the law is clearly established. *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2092-95, 182 L. Ed. 2d 985 (2012). The Supreme Court determined that the law was not clearly established when the impact of a case from that Court on Tenth Circuit precedent was not clear. *Id.* at 2094-96. The Supreme Court observed that if the caselaw is not clear, so that a reasonable official could have interpreted it in a way that made the official's conduct constitutional, the official is entitled to qualified immunity. *Id.* at 2095. This conclusion follows even if the Supreme Court would not adopt that interpretation; the issue is whether "it was at least arguable" that the official's

---

however, that Vasquez committed any act violating their privacy rights except on October 4-5, 2011. Therefore, the relevant time for the determination of whether the privacy right asserted was clearly established remains October 4-5, 2011.

interpretation was correct. *Id*. at 2096; *see Wilson v. Layne*, 526 U.S. 603, 617-18 (1999) (stating that officers cannot be expected to predict the future course of constitutional law).

The Tenth Circuit clarified the requisite showing of "clearly established weight of authority from other courts," explaining that the caselaw should reflect "'a robust "consensus of cases of persuasive authority" … that would alter our analysis of the qualified immunity question.'" *A.M.*, 2016 WL 3999756, *19 (quoting *Plumhoff v. Rickard*, ___ U.S. ___, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) (quoting *al-Kidd*, 563 U.S. at 741)). In *A.M.*, the Tenth Circuit held that caselaw from the intermediate appellate courts of three states did not satisfy the plaintiff's burden to show "the clearly established weight of authority from other courts." *Id*.

Plaintiffs' response cites testimony by Vasquez that he believed that taking the photographs violated Samuel Pauly's and his family's right to privacy. [Doc. 15, p. 6] But Plaintiffs provide no citation to authority making a defendant's personal belief relevant or persuasive, nor does the cited testimony refer to a constitutional right. The FAC alleges that First Judicial District Attorney Angela Pacheco commented that Vasquez's actions were "'totally inappropriate and lacking in judgment and taste,'" and the chief of police made similar comments. [Doc. 13, pp. 4-5, ¶¶ 20, 29] While the Court agrees that Vasquez's conduct was offensive and unprofessional, these factual allegations do not contribute significantly to Plaintiffs' burden to provide persuasive legal authority.

Plaintiffs cite a number of cases recognizing a privacy right in other contexts—including marriage, contraception, family relationships, child rearing and education, and procreation. [Doc. 15, p. 7] This caselaw, however, does not carry Plaintiffs' burden because the cases either relate only to a broad general right or a privacy right applicable in different factual contexts. *See Quinn,* 780 F.3d at 1005, 1013 (stating that it is insufficient to point only to clearly established

8

law "at a high level of generality," rather than relating to the specific context of the case with a "substantial correspondence" to the conduct in question). With regard to whether officials are on notice that "their conduct violates established law even in novel factual circumstances," the Tenth Circuit has adopted a "sliding scale," under which the "more obviously egregious the conduct … the less specificity is required from prior case law to clearly establish the violation." *A.M.*, 2016 WL 3999756, *6 (internal quotation marks omitted). Plaintiffs, however, have not cited cases giving the Court sufficient guidance in this regard.

Plaintiffs also cite several cases closer to the specific factual context of this case. [Doc. 15, pp. 7-12]

First, Plaintiffs argue that *Favish* "is <u>directly applicable</u> to the question of whether a <u>constitutionally</u> protected right to privacy exists in the death images of a loved one." [Doc. 15, p. 7 (emphasis added)] *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 170 (2004). The Court disagrees. *Favish* discusses the statutory right to privacy under the Freedom of Information Act ("FOIA"), holding that death scene photographs fall under Exemption 7(C) of the FOIA for "law enforcement records or information … [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). *Favish* holds that family members have a privacy right under Exemption 7(C) in the death images of a decedent. As Defendant argues, *Favish* concerns statutory interpretation of the FOIA and a common law right—not a constitutional privacy right; *Favish* does not involve § 1983. *See Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1153-54 (9th Cir. 2012) (stating that *Favish* described "the well-established common law right, not a constitutional right"). *Favish* does not support Plaintiffs' argument for a constitutional privacy right. *See United States Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 n.13 (1989) ("The question of the

9

statutory meaning of privacy under the FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution."); *Free Speech Coalition v. Gonzales*, 406 F. Supp. 2d 1196, 1210 n.13 (D. Colo. 2005) (distinguishing statutory privacy right from constitutional right).

In addition, the Supreme Court recognized in *Favish* that the privacy right under the FOIA is broader than the privacy right under the Constitution or under the common law:

> We have observed that the statutory privacy right protected by Exemption 7(C) goes beyond the common law and the Constitution. *See Reporters Committee*, 489 U.S., at 762, n. 13, 109 S.Ct. 1468 (contrasting the scope of the privacy protection under FOIA with the analogous protection under the common law and the Constitution); see also *Marzen v. Department of Health and Human Servs.*, 825 F.2d 1148, 1152 (C.A.7 1987) ("[T[he privacy interest protected under FOIA extends beyond the common law").

*Favish*, 541 U.S. at 170.  Plaintiffs make no attempt to argue that this difference in the extent of the privacy right is irrelevant.

Plaintiffs cite *Prison Legal News v. Executive Office for United States Attorneys*, 628 F.3d 1243 (10th Cir. 2011). [Doc. 15, p. 9]  But this case was also decided under the FOIA, and does not support Plaintiffs' argument that a constitutional right was clearly established.

Plaintiffs also cite *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012).  In *Marsh*, the defendant retired from his government position in 2000—which was the latest time at which he could have been acting under color of state law. *Id*. at 1158-59.  Six years later—in 2006—the defendant sent an autopsy photograph to the press.  But the Ninth Circuit held that even including this later conduct, the caselaw in 2006 (including *Favish*, *Catsouras*, and *Melton*) was insufficient to clearly establish a federal constitutional right to control dissemination of death images.  In fact, the Ninth Circuit stated that *Marsh* appeared to be "the first case to

consider whether the common law right to non-interference with a family's remembrance of a decedent is so ingrained in our traditions that it is constitutionally protected." *Id*. at 1154.  The Ninth Circuit, while holding in *Marsh* that there was a constitutional privacy right under such circumstances, explicitly held that the right asserted was not clearly established by 2006.  *Marsh* concluded that *Favish* did not show that the right was clearly established, because "*Favish* was decided in the FOIA context" and would not put a reasonable officer on notice that the right applied outside the statutory context as a "separate constitutional right."  *Id*. at 1159.

The *Marsh* court discussed two additional cases.  In *Melton*, a federal district court in Ohio denied judgment on the pleadings to defendants on a § 1983 claim for "invasion of privacy/violation of right to publicity" when the plaintiffs alleged that a photographer was allowed to manipulate and photograph the remains of the plaintiffs' family member.  *Melton v. Bd. of Cnty. Comm'rs*, 267 F. Supp. 2d 859, 865 (S.D. Ohio 2003).  The case does not involve the issue of whether such a right was clearly established.  At any event, a district court judgment from Ohio does not show clearly established law in the Tenth Circuit.  "'[A] district court decision will not ordinarily "clearly establish" the law even of its own circuit, much less that of other circuits.'"  *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1397 (10th Cir.1992) (internal quotation marks omitted)); *Elwell v. Byers*, 699 F.3d 1208, 1218 (10th Cir. 2012) ("Although the precise quantum of case law sufficient to clearly establish a violation is a matter of some dispute, we think it quite evident that a single case from an out-of-circuit district court cannot clearly establish the law in the Tenth Circuit.").

The *Marsh* court also discussed *Catsouras*, in which a California appellate court held that a constitutional privacy right was not clearly established by *Favish* and *Melton*.  *Catsouras v.*

*Dep't of Calif. Highway Patrol*, 104 Cal. Rptr. 3d 352 (Cal. Ct. App. 2010).  *Catsouras* observed that *Favish* was decided in the context of a Freedom of Information Act request, involved a statutory right under the FOIA, did not address § 1983, and would not make it clear to a reasonable officer that his conduct was unconstitutional.  *Id*. at 385.  *Melton* did address the privacy right in a § 1983 context, but "one isolated case" from a district court in Ohio would not put an officer on notice of a constitutional violation.  *Id*.; *see Elwell*, 699 F.3d at 1218.  The California appellate court concluded that *Favish* and *Melton*, taken together, were insufficient to show clearly established law, and affirmed the trial court's grant of qualified immunity. *Catsouras*, 104 Cal. Rptr. 3d at 385.

  *Marsh* supports Defendant's position, stating that *Favish*, *Melton*, and *Catsouras* recognized a common law right as distinguished from a constitutional right.  680 F.3d at 1153-54.  *Marsh* held that the constitutional privacy right was not clearly established as of 2006, while the relevant time in Vasquez's case is October 2011.  *Marsh* does support Defendant's argument, however, because of the Ninth Circuit's observation that *Marsh* was the first case to consider this issue—thus showing that the right was not clearly established before May 29, 2012, the date *Marsh* was decided and well after the relevant time in Defendant's case.

  Since Plaintiffs failed to carry their burden to identify caselaw showing the relevant constitutional right was clearly established on October 4-5, 2011, Vasquez is entitled to qualified immunity.  *Favish* and *Prison Legal News* do not involve a constitutional right.  *Melton* and *Catsouras*, as merely two cases from a federal district court and a state intermediate court, cannot clearly establish the law of the Tenth Circuit.  *See Gillen*, 761 F.3d at 1106 (10th Cir. 2014); *Woodward*, 977 F.2d at 1397.  Nor could *Marsh*, as one opinion from another circuit, clearly establish the law of the Tenth Circuit.  *See Albright*, 51 F.3d at 1538 (concluding that a

single, on-point case from another circuit did not show a right was clearly established). These few cases, even taken together, do not show the "'robust "consensus of cases of persuasive authority" … that would alter our analysis of the qualified immunity question.'" *A.M.*, 2016 WL 3999756, *19; *see Panagoulakos v. Yazzie*, 741 F.3d 1126, 1131 (10th Cir. 2013) (concluding that decisions from a "handful of other courts" do not represent the "clearly established weight of authority of other courts").

Without "'fair and clear warning of what the Constitution requires,'" an officer is entitled to qualified immunity. *Sheehan*, 135 S. Ct. at 1778 (quoting *al-Kidd*, 131 S. Ct. at 2086-87 (Kennedy, J., concurring)). This is an "exacting standard" that "'gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *al-Kidd*, 131 S. Ct. at 2085). The Court concludes that existing precedent did not place the constitutional question beyond debate, and Vasquez is entitled to qualified immunity. *See al-Kidd*, 131 S. Ct. at 2083; *Quinn*, 780 F.3d at 1005.

Because the Court concludes that Plaintiffs failed to carry their burden on the second prong of the qualified immunity analysis, the Court need not reach the issue of whether Vasquez violated Plaintiffs' constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## CONCLUSION

Count 2 of the FAC was asserted only against Defendants Shilling and Kassetas; pursuant to the Court's earlier Order dismissing them, Count 2 has been effectively dismissed.

The Court concludes that Plaintiffs have not carried their heavy burden to show that the constitutional right asserted—a privacy right of close family members to control dissemination

of "death scene photographs" under the Fourteenth Amendment—was clearly established at the relevant time.  The Court therefore grants Defendant Vasquez's motion to dismiss Count 1.

**IT IS THEREFORE ORDERED THAT:**

(1) *Defendants' First Motion To Dismiss Plaintiffs' Complaint and Memorandum in Support Thereof* [Doc. 12] is **GRANTED in part** and **DENIED AS MOOT in part**, as discussed above; and

(2)  *Defendant Mario Vasquez's Motion To Dismiss First Amended Complaint for Damages for Deprivation of Civil Rights* [Doc. 18] is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Plaintiffs are granted leave to amend the complaint within thirty days from the date of this order. Failure to timely file an amended complaint may result in dismissal of this case.

_____
**UNITED STATES DISTRICT JUDGE**